# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### PENSACOLA DIVISION

KELLI MCALLISTER,          )
                           )
     **Plaintiff,**          )
                           )
**v.**                    )    **Case No: 5:21-cv-00123-TKW-MJF**
                           )
**SAVAGE ARMS**        )    **JURY TRIAL DEMANDED**
**INCORPORATED,**      )
                           )
     **Defendant.**       )

## FIRST AMENDED COMPLAINT

Comes now Plaintiff, Kelli McAllister, and pursuant to Rule 15 of the *Federal Rules of Civil Procedure* hereby amends her complaint as follows:

## Jurisdiction and Venue

1.    Jurisdiction for this case is proper under 28 U.S.C. § 1332.  Diversity jurisdiction exists because the amount in controversy exceeds $75,000 and all defendants are diverse from all defendants. The Plaintiff resides in Slocomb, Alabama. The Defendant is a corporation with its primary office in Westfield, Massachusetts.

2.    Venue is proper in this court under 28 U.S.C. 1391(b)(2) because the injury occurred in Holmes County, Florida and the firearm, to be described hereinafter, was purchased in Washington County, Florida, both counties being part

of the Northern District of Florida. Because the firearm was purchased in Florida, and Savage Arms does business in the Northern District of Florida, Defendant Savage Arms is deemed to be a resident of the Northern District of Florida for venue purposes under 28 U.S.C. § 1391(c)(2).

## Parties

3.     At all times material to this complaint the Plaintiff, Kelli McAllister, was over the age of 18 and a resident of Slocomb, Alabama.

4.     Defendant, Savage Arms Incorporated, is a for profit corporation with its principal place of business located at 100 Springdale Road, Westfield, Massachusetts. Defendant, Savage Arms Incorporated, does business in the state of Florida including Washington County, Florida.

## General Allegations

5.     On or about November 16, 2019, Kelli McAllister and/or her husband, Stacey McAllister, purchased a Savage Axis II, serial # N451387, rifle from Kings Outdoors in Chipley, Washington County, Florida.

6.     The Savage Axis II, serial # N451387, was designed, tested, developed, manufactured, marketed, advertised, distributed and sold by Savage Arms Incorporated.

7.     Savage Arms Incorporated, caused the subject rifle to be distributed and sold in various states within the United States, including Florida.

8.     The Defendant, Savage Arms Incorporated, expected the rifle to reach the user, including the Plaintiff, in substantially the same condition it was in when it was manufactured and when it left its custody or its agents and representative's custody and control.

9.     Plaintiff, Kelli McAllister, and/or her husband, Stacey McAllister, purchased the rifle and maintained it in a condition which was without substantial change from the condition it was in when it left the custody and control of the Defendant, its agents and representatives as confirmed by the parties' joint inspection of the subject rifle.

10.     After purchasing the rifle, and before using it, the Plaintiff Kelli McAllister read through the owner's manual for the rifle which was provided by the Defendant, Savage Arms Inc. for its customers, and was familiar with the proper ways to handle the rifle according to the instructions in the manual and her experience in handling firearms.

11.     Defendant Savage Arms Inc. specifically designed and marketed the Savage Axis II, serial # N451387 rifle.  In its operation manual it states:

The safety on the Axis models has **TWO POSITIONS:**

- **FULL SAFE**—Pull safety button towards shooter (trigger blocked – bolt can be opened).



- **SAFETY OFF- READY TO FIRE.** Push safety button away from shooter.



**FULL SAFE**

1.  The safety is in the FULL SAFE position when it has been moved fully rearward, covering the red "dot" (See Figure 1).

2.  The safety should be moved into the FULL SAFE position prior to closing the bolt when the firearm is loaded.

3.  In the FULL SAFE position, the trigger is blocked from moving and the bolt can still be opened.

**WHEN CARRYING A LOADED FIREARM, THE SAFETY MUST ALWAYS BE IN THE FULL SAFE POSITION.**

**THE ONLY TIME YOU CAN BE ABSOLUTELY CERTAIN THAT A GUN CANNOT FIRE IS WHEN THE ACTION IS OPEN AND IT IS COMPLETELY EMPTY OF AMMUNITION.**

**SAFETY OFF – READY TO FIRE**

1.   The safety is in the OFF position when it has been moved fully forward, exposing the red "dot" (see FIGURE 2).

**\*\*NEVER TRANSPORT/CARRY A LOADED FIREARM WTH THE SAFETY OFF. REMEMBER- AS ON SOME OTHER SAVAGE MODELS, THERE IS NO MID-SAFE POSITION ON THE SAVAGE AXIS\*\***

12.   The Plaintiff purchased the subject rifle in part because of these safety features.

13.   On February 11, 2021, Plaintiff Kelli McAllister and her husband, Stacey McAllister, were deer hunting in North Florida. Kelli used the Savage Axis II youth model rifle. At all times during the hunt Kelli McAllister had the safety in the 'on' position.  Kelli and Stacey positioned themselves in tree stands at different locations. After sitting in the tree stand for several hours and having not seen a deer, Kelli climbed out of the stand and down to the ground to stretch and use the restroom.  She was in the process of climbing back into the tree stand with the subject

rifle on her left shoulder and the safety in the "on" position. As she neared the top of the ladder, she turned the rifle upside down on her left shoulder because she did not want the rifle to catch on the tree stand covering. As she began to reach back for the rifle to place it on the seat so that she could finish the remaining part of her climb into the stand, the rifle fired its 6.5 Creedmore round, which entered above Kelli's left ankle and exited out the opposite side of her left leg. She was able to sit on the footrest of the tree stand, used her belt as a tourniquet, and call Stacey. Stacey texted the other members of their hunting party and the friend who was sitting nearest Kelli arrived first. Shortly thereafter her husband, Stacey, arrived, reapplied the tourniquet, and got her down out of the tree stand. Stacey had already called EMS. Kelli was taken out of the woods on a backboard. Due to weather, she was not able to be life flighted but taken by ground transportation, which took over an hour, to Flowers Hospital. At Flowers, her blood pressure dropped to around 60 over 30 and she received four pints of blood. The weather still prohibiting air flight, she was transported by ambulance to UAB.

14.    Upon arrival at UAB the most acute challenge was to evaluate the blood flow to determine whether her leg could be saved. Once a decision was made to amputate her leg, she was sent to the Operating room and afterwards spent several days in ICU before being placed in a regular hospital room. Shortly thereafter, she

developed an infection. Kelli spent nineteen (19) days at UAB and underwent seven separate surgeries.

15.    After being discharged from UAB, Kelli has had several follow-up visits with a woundcare specialist who is monitoring the wound at the incision site, which was left open to expedite healing. Unfortunately, the wound got infected which required several rounds of antibiotics to address. She continues to see her primary care physician and for several weeks had home health and physical rehab therapy.

16.    She initially purchased several wheelchairs, a walker, and a hand crutch to determine the best apparatus to assist her in mobility.

17.    Her home was not wheelchair accessible and several adjustments have had to be made to assist in her ambulation around the home.

18.    In the time since her injury, she has been fitted for several prosthetics and has to receive regular adjustments to maintain her mobility.

19.    Even with the prosthetic, it is difficult for her to get upstairs to her sewing room and walk on uneven terrain.

20.    Prior to her injury, Kelli had worked as a nurse practitioner. Due to her mobility issues, she has not been able to return to hospital practice and has taken a job teaching at a local community college.

21.     At all times during the hunt Kelli McAllister had the safety in the "on" position and it was in the "on" position as she climbed into the tree stand immediately before the incident.

22.     After the misfire, Kelli learned for the first time that the subject rifle did not have a **Two Position** safety as represented on page 4 of the Owner's Manual but, instead, had a mid-position. In firearms parlance it had a "false safety" position between the **FULL SAFE** and **SAFETY OFF** positions. This middle position was undescribed in the manual and unexplained to Plaintiff Kelli McAllister despite Savage having full knowledge that a "mid-safe" defect was common in Axis II rifles.

23.     Despite the instructions in the Owner's Manual, once the subject safety is moved from the **SAFETY OFF** position to the next position- which should be the **FULL SAFE** position- it is actually a middle position that acts as a second **Safety Off** position. The gun operator is instructed by the manual to believe at this point the firearm is in **FULL SAFE** when it was actually in a second **SAFETY OFF** position.

24.     This middle position is misleading to the consumer and user of the firearm like Plaintiff Kelli McAllister. Additionally, this third, middle position represents a defect and/or malfunction in design, manufacture, and use.

25.     Plaintiff Kelli McAllister was misled by the Defendant Savage and its Operations Manual concerning the number of Safety Positions on the subject firearm.

26.     Plaintiff Kelli McAllister believed the Operations Manual as it communicated a **TWO POSITION** Safety design.

27.     On February 11, 2021, while hunting, Kelli McAllister believed she had put the firearm in a **FULL SAFE** position when, in fact, she just moved the safety from the first **SAFETY OFF** position to a second **SAFETY OFF** position.

28.     As a result of these defects, the Savage rifle misfired causing Plaintiff Kelli McAllister to suffer extensive and permanent tissue, bone, nerve and muscle damage requiring multiple hospitalizations and medical procedures leaving permanent limitations, scars, and deficits.

29.     Her injuries are continuing, are expected to be permanent, life-long injuries.

## COUNT I
## Strict Liability- Design Defect

30.     Plaintiff McAllister realleges the factual allegations of the previous paragraphs as if fully incorporated herein.

31.     At all times material to the allegations in this complaint, Defendant Savage was engaged in the business of designing, manufacturing, testing, inspecting, distributing, and selling firearms, and did in fact design, manufacture, test, inspect, distribute, sell, and place into the stream of commerce the subject rifle, knowing, expecting, and intending that the firearm would be purchased and used by consumers and members of the public like Plaintiff, Kelli McAllister.

27.     Defendant Savage designed, tested, developed, manufactured, marketed, advertised, distributed, and sold the subject rifle in a defective condition that is unreasonably dangerous to the user who utilized it for its intended purpose and as Defendant Savage expected it to be used and as it was used by the Plaintiff Kelli McAllister on February 11, 2021.

28.     The subject rifle is defectively and unreasonably dangerous so as to render Defendant Savage strictly liable for the injuries to Plaintiff Kelli McAllister, because at all times it failed to perform safely and in the manner that ordinary users like the Plaintiff have a right to expect.

29.     The subject rifle is defectively designed because it posed an unreasonable risk of injury to users, including the Plaintiff, when the gun was being used as it was intended, and because it is not safe or suitable for its intended purpose.

30.     The subject rifle is defectively designed because the risks of danger inherent in the design outweigh its benefits.

31.     Among the defects in the subject rifle is the fact it has a 'false safety' condition caused by a defective design where a small set screw is allowed to interact with the rifle's safety bar. This creates a "false safe" mid position. This dangerously misleads users like Kelli McAllister. Additionally, the middle position is not a **FULL SAFE** position but a **SAFETY OFF** position meaning the subject rifle as designed, developed, manufactured, tested, marketed, advertised, distributed, and

sold has two **SAFETY OFF** positions and one **FULL SAFE** position when the Owner's Manual clearly depicts a **TWO POSITION** safety with one position of **FULL SAFE** and one position of **SAFETY OFF**.

32.     Before February 11, 2021, Plaintiff McAllister had no knowledge of the defective and/or misleading condition of the subject rifle and had no reason to suspect that the gun was unreasonably dangerous prior to the unexpected discharge of the rifle.

33.     The subject rifle was defective and unreasonably dangerous when it was sold by Defendant Savage and at the time it left Savage's possession and control.

34.     Plaintiff McAllister used the subject rifle in a reasonably foreseeable manner.

35.     Discovery has revealed that Defendant Savage knew, or in the exercise of reasonable care and investigation, should have known of the subject rifle's defective mid position, that there are reasonable alternative designs that would have prevented the defect from occurring, and that Savage chose not to alter the  design prior to manufacturing the subject rifle despite knowing of the issue.

36.     The defective condition and/or conditions of the subject rifle was the proximate and sole cause of Plaintiff McAllister's permanent physical injuries, economic damages, and mental anguish which include, but are not limited to, past, current, and future pain and suffering, disfigurement, disability, loss of capacity for

the enjoyment of life, past and future medical, hospital, surgical, and rehabilitative expenses, emotional distress, mental anguish and inconvenience.

37.    These injuries are permanent and continuing in nature.

Wherefore, Plaintiff Kelli McAllister demands judgment against Savage Arms, Inc. for all damage, including punitive damages, plus costs, interest and attorney fees as may be allowed by law and demands trial by jury of all issues so triable.

## COUNT II
## Strict Liability- Manufacturing Defect

38.    Plaintiff McAllister realleges the factual allegations of the previous paragraphs as if fully incorporated herein.

39.    At all times material to the allegations in this complaint, Defendant Savage was engaged in the business of designing, manufacturing, testing, inspecting, distributing, and selling firearms, and did in fact design, manufacture, test, inspect, distribute, sell, and place into the stream of commerce the subject rifle, knowing, expecting, and intending that the firearm would be purchased and used by consumers and members of the public like Plaintiff, Kelli McAllister.

40.    Defendant Savage designed, tested, developed, manufactured, marketed, advertised, distributed and sold the subject rifle in a defective condition that is unreasonably dangerous to the user who utilized it for its intended purpose

and as Defendant Savage expected it to be used and as it was used by the Plaintiff Kelli McAllister on February 11, 2021.

41.    The subject rifle is defectively and unreasonably dangerous so as to render Defendant Savage strictly liable for the injuries to Plaintiff Kelli McAllister, because at all times it failed to perform as safely and in the manner that ordinary users like the Plaintiff have a right to expect.

42.    The subject rifle was defectively manufactured because it posed an unreasonable risk of injury to users, including the Plaintiff, when the rifle was being used as it was intended, and because it is not safe or suitable for its intended purpose.

43.    The subject rifle was defectively manufactured in that the safety set screw was maladjusted such that it interacted with the safety bar improperly and created a perceptible mid-position.

44.    The subject rifle was defectively manufactured because the risks of danger inherent in it as manufactured outweigh its benefits.

45.    The subject rifle is unreasonably dangerous because of a manufacturing defect if it is different from its intended design and fails to perform as safely as the intended design would have performed.

46.    The rifle is defective because it is unreasonably dangerous even if Defendant Savage exercised all possible care in the subject rifle's preparation and sale.

47.     The rifle is defective because of the manufacturing defect (false safety). because it was different from its intended design and failed to perform as safely as the intended design would have performed.

48.     The rifle was expected to, and did, reach Plaintiff McAllister without substantial change affecting its condition as confirmed by the parties' joint inspection.

49.     The manufacturing defect (false safety) was the proximate cause of Plaintiff McAllister's injuries including permanent physical injuries, economic damages, and mental anguish which include, but are not limited to, past, current, and future pain and suffering, disfigurement, disability, loss of capacity for the enjoyment of life, past and future medical, hospital, surgical, and rehabilitative expenses, emotional distress, mental anguish and inconvenience.

50.     These injuries are permanent and continuing in nature.

51     Discovery has revealed that Defendant Savage knew that its Axis II rifles were prone to this defect for, at least, seven years before the subject rifle but made no changes to the Axis II until after Plaintiff's rifle was manufactured.

52.     For the foregoing reasons, Defendant Savage is strictly liable for all injuries, damages, and losses, including punitive damages, that resulted from the manufacturing defect of the subject rifle.

Wherefore, Plaintiff Kelli McAllister demands judgment against Savage Arms, Inc. for all damages, including punitive damages, plus costs, such interest and attorney fees as may be allowed by law, and demands trial by jury of all issues so triable.

## COUNT III
## Negligence

53.     Plaintiff McAllister realleges the factual allegations from the previous paragraphs as if fully incorporated herein.

54.     Defendant Savage owed a duty of reasonable care to Plaintiff McAllister, and to other foreseeable users of the subject rifle to design, equip and manufacture the rifle in a manner safe for its foreseeable users and foreseeable uses.

55.     Defendant Savage breached this duty of care to Plaintiff McAllister in one or more of the following ways:

a.      Failing to properly design, equip, and manufacture the subject rifle with safety devices which performed in accordance with the owners' operator's manual information and instructions as well as within the reasonable expectations of the ordinary user and consumer like Plaintiff McAllister;

b.      Failing to properly design, equip, and manufacture the subject rifle's safety devices and systems;

c.      Designing and manufacturing a rifle that it knew was prone to have a perceptible false safe mid-position between fire and safe;

d.      Designing and manufacturing a defective rifle that it knew would fire when in the safety was in the middle position;

e.  Designing and manufacturing a defective rifle that it knew would discharge when the safety is not in the "SAFETY OFF— READY TO FIRE" position;

f.  Designing and manufacturing a defective safety device system for the rifle;

g.  Failing to employ available alternative designs which would have prevented the subject rifle from discharging as it did;

h.  Failing to use and apply good, safe, usual, prevailing and reasonable engineering principles and standards in designing, equipping, manufacturing, marketing, and distributing the subject rifle;

i.  Failing to take adequate corrective action or preventive action once it knew of the mid-safe defect;

j.  Failing to maintain proper records and data of incidents, complaints, malfunctions, inspections and testing;

k.  Failing to create and provide clear operational and safety instructions, manuals, warnings and literature regarding this known defect;

l.  Failing to warn of all of the above; and

m.  breaches of other duties as borne out in discovery

56.    As a direct and proximate cause of the defendant's negligence, Plaintiff McAllister has suffered permanent physical and economic injuries and damage, which include past and future pain and suffering, disfigurement, disability, loss of capacity of the enjoyment of life, past and future medical, hospital, surgical, and rehabilitative expenses.

57.    Plaintiff McAllister's injuries are permanent and continuing in nature.

Wherefore, Plaintiff Kelli McAllister demands judgment against Savage Arms, Inc. for all damages, including punitive damages, plus costs, such interest and attorney fees as may be allowed by law, and demands trial by jury of all issues so triable.

## COUNT IV
## Negligent Failure to Warn

58.     Plaintiff McAllister realleges the factual allegations from the previous paragraphs as if fully incorporated herein.

59.     Defendant Savage had knowledge that the subject rifle and others with a similarly designed safety were defective in that the rifle was prone to false safety defect like the one present in the subject rifle, and the Defendant's knowledge of the defects in the rifle were superior to that of Plaintiff McAllister and/or other users and consumers.

60.     Defendant Savage was aware of other instances where rifles of the same design as the subject rifle contained a "false safe" mid-position.

61.     Defendant Savage had a duty:

    a.     To warn Plaintiff McAllister, and others similarly situated, of the subject rifle's propensity to have a 'false safe' mid-position.

    b.     To warn Plaintiff McAllister, and others similarly situated, that the subject rifle, while in the mid-safe position, was able to discharge;

    c.     To warn Plaintiff McAllister, and others similarly situated, that the subject rifle was designed, manufactured, and distributed

with the intent that when the safety was in the middle 'false safety' position the rifle would fire; and

    d.    To warn Plaintiff McAllister, and others similarly situated, of the dangerous condition of the subject rifle and other rifles of the same model, design, and manufacture.

62.    Defendant Savage owed a duty of reasonable care to Plaintiff McAllister to warn of the above defective conditions.

63.    Defendants Savage breached these duties to warn which made the subject rifle unreasonably dangerous when used in its intended manner.

64.    Defendants Savage breached these duties of care by failing to warn Plaintiff McAllister and others similarly situated of the dangerous condition of the subject rifle and rifles of the same model, design, and manufacture.

65.    Plaintiff McAllister used and operated the rifle in a reasonable and foreseeable manner.

66.    Plaintiff McAllister had no knowledge, or reason to know, of any defective condition or conditions with respect to the subject rifle, its safety devices, or its propensity for discharging while safety mechanisms appeared to be activated and/or engaged.

67.    As borne out by discovery, Defendant Savage failed to act reasonably and expeditiously upon notice of the defects to said defects in the rifle's design and manufacture, and to correct the dangerous conditions of the subject rifle such as

implementing a design change aimed at fixing this defect prior to the manufacture of the subject rifle.

68.    As a direct and proximate cause of Defendant Savage's failure to warn Plaintiff McAllister as has been set out above Plaintiff McAllister has suffered permanent physical and economic injuries and damage, which include past and future pain and suffering, disfigurement, disability, loss of capacity of the enjoyment of life, past and future medical, hospital, surgical, and rehabilitative expenses.

69.    Plaintiff McAllister's injuries are permanent and continuing in nature.

Wherefore, Plaintiff Kelli McAllister demands judgment against Savage Arms, Inc. for all damages, including punitive damages, plus costs, such interest and attorney fees as may be allowed by law, and demands trial by jury of all issues so triable.

## COUNT V
## Breach of Express Warranty

70.    Plaintiff McAllister realleges the factual allegations from the previous paragraphs as if fully incorporated herein.

71.    The subject rifle is defective as it does not conform to the representations of fact made by Defendant Savage, orally or in writing, in connection with the transaction on which Plaintiff McAllister relied at the time of purchase, or immediately thereafter.

72.     Defendant Savage made specific representations of fact in writing in their Instruction Manual and "Limited Warranty" – written documents which are provided with the rifle. Each of the representations of fact is a separate and independent express warranty made to Plaintiff McAllister.

73.     The misrepresentations of fact made to Plaintiff McAllister and set forth in the Savage manual, include but are not limited to the following:

      a.     "The safety on the Axis models has <u>TWO POSITIONS</u>"

      b.     "FULL SAFE - Pull safety button towards shooter (trigger blocked –..."

      c.     "The safety is in the FULL SAFE position when it has been moved fully rearward, covering the red "dot"

74.     The Defendant Savage breached these express warranties by knowingly failing to provide a product which conformed to these representations of fact.

75.     As a direct and proximate cause of Defendant Savage's breach of express warranties, Plaintiff McAllister has suffered permanent physical and economic injuries and damage, which include past and future pain and suffering, disfigurement, disability, loss of capacity of the enjoyment of life, past and future medical, hospital, surgical, and rehabilitative expenses.

76.     Plaintiff McAllister's injuries are permanent and continuing in nature.

Wherefore, Plaintiff Kelli McAllister demands judgment against Savage Arms, Inc. for all damages, including punitive damages, plus costs, such interest and

attorney fees as may be allowed by law, and demands trial by jury of all issues so triable.

## COUNT VI
## Breach of Implied Warranty of Merchantability

77.    Plaintiff McAllister realleges the factual allegations from the previous paragraphs as if fully incorporated herein.

78.    The subject rifle was defective as it was not reasonably fit for either the uses intended or the uses reasonably foreseeable by Defendant Savage due to the safety defect.

79.    Defendant Savage was on notice of the defects at the time the subject rifle was designed, manufactured, tested, inspected, and distributed to members of the public like Plaintiff McAllister. Defendant Savage knew about the subject defect for years prior to the manufacture of the subject rifle. In fact, discovery has shown that Defendant Savage adopted a design change aimed at curing the safety defect two years prior to its actual implementation and at least five years after it had notice of the defect.

80.    As a result of the Defendant's breach of implied warranties of merchantability, Plaintiff McAllister suffered permanent physical and economic injuries and damage, which include past and future pain and suffering, disfigurement, disability, loss of capacity of the enjoyment of life, past and future medical, hospital, surgical, and rehabilitative expenses.

81.     Plaintiff McAllister's injuries are permanent and continuing in nature.

Wherefore, Plaintiff Kelli McAllister demands judgment against Savage Arms, Inc. for all damages, including punitive damages,  plus costs, such interest and attorney fees as may be allowed by law, and demands trial by jury of all issues so triable.

## COUNT VII
## Breach of Implied Warranty of Fitness for Particular Purpose

82.     Plaintiff McAllister realleges the factual allegations from the previous paragraphs as if fully incorporated herein.

83.     Defendant Savage's subject rifle is defective as it was not reasonably fit for the specific purpose for which Defendant Savage knowingly sold the product and for which, in reliance on the judgment of Defendant Savage, Plaintiff McAllister purchased the subject rifle.

84.     As a result of Defendant Savage's breach of implied warranties of fitness for a particular purpose, Plaintiff McAllister suffered permanent physical and economic injuries and damage, which include past and future pain and suffering, disfigurement, disability, loss of capacity of the enjoyment of life, past and future medical, hospital, surgical, and rehabilitative expenses.

85.     Plaintiff McAllister's injuries are permanent and continuing in nature.

Wherefore, Plaintiff Kelli McAllister demands judgment against Savage Arms, Inc. for all damages, including punitive damages, plus costs, such interest and

attorney fees as may be allowed by law, and demands trial by jury of all issues so triable.

**COUNT VIII**
**Intentional Misrepresentation**

86.    Plaintiff McAllister realleges the factual allegations from the previous paragraphs as if fully incorporated herein.

87.    Defendant Savage made false statements concerning a material fact that it knew were false when they were made or made the statements while being aware that Savage did not know whether the statements were true or false, and Savage intended that consumers and purchasers like Plaintiff McAllister, and others similarly situated, would rely on the false statements.

88.    The false statements in the Operator or Owner's Manual regarding the safety include but are not limited to the following:

The safety on the Axis models has **TWO POSITIONS:**

- F**ULL SAFE**—Pull safety button towards shooter (trigger blocked – bolt can be opened).

- **SAFETY OFF- READY TO FIRE.** Push safety button away from shooter.

**FULL SAFE**

1.    The safety is in the FULL SAFE position when it has been moved fully rearward, covering the red "dot" (See Figure 1 below).



2.    The safety should be moved into the FULL SAFE position prior to closing the bolt when the firearm is loaded.

3.    In the FULL SAFE position, the trigger is blocked from moving and the bolt can still be opened.

**WHEN CARRYING A LOADED FIREARM, THE SAFETY MUST ALWAYS BE IN THE FULL SAFE POSITION.**

**THE ONLY TIME YOU CAN BE ABSOLUTELY CERTAIN THAT A GUN CANNOT FIRE IS WHEN THE ACTION IS OPEN AND IT IS COMPLETELY EMPTY OF AMMUNITION.**

**SAFETY OFF – READY TO FIRE**

1.    The safety is in the OFF position when it has been moved fully forward, exposing the red "dot" (see FIGURE 2 below)



**\*\*NEVER TRANSPORT/CARRY A LOADED FIREARM WTH THE SAFETY OFF. REMEMBER-AS ON SOME OTHER SAVAGE MODELS, THERE IS NO MID-SAFE POSITION ON THE SAVAGE AXIS\*\***

89.   These material statements and/or representations made regarding the safety were made intentionally, wantonly, recklessly, deliberately, negligently, and/or mistakenly.

90.   These false statements were a material fact of such importance that Plaintiff McAllister would not have purchased or used the subject rifle, but for these false statements.

91.   Plaintiff McAllister reasonably relied on these false statements to her detriment.

92.   These false statements were the proximate cause and/or a contributing cause of Plaintiff McAllister's injuries which include permanent physical and economic injuries and damage, which include past and future pain and suffering,

disfigurement, disability, loss of capacity of the enjoyment of life, past and future medical, hospital, surgical, and rehabilitative expenses.

93.    Plaintiff McAllister's injuries are permanent and continuing in nature.

Wherefore, Plaintiff Kelli McAllister demands judgment against Savage Arms, Inc. for all damages, including punitive damages, plus costs, such interest and attorney fees as may be allowed by law, and demands trial by jury of all issues so triable.

## COUNT VIII
## Reckless and/or Wanton Misrepresentation

94.    Plaintiff McAllister realleges the factual allegations from the previous paragraphs as if fully incorporated herein.

95.    Defendant Savage made false statements concerning a material fact that it knew were false when they were made or while being aware that Savage did not know whether they were true or false, and they intended that consumers and purchasers like Plaintiff McAllister, and others similarly situated, would rely on the false statements.

96.    The false statements in the Operator or Owner's Manual regarding the safety include but are not limited to the following:

The safety on the Axis models has **TWO POSITIONS:**

- **FULL SAFE**—Pull safety button towards shooter (trigger blocked – bolt can be opened).

- **SAFETY OFF- READY TO FIRE.** Push safety button away from shooter.

**<u>FULL SAFE</u>**

1. The safety is in the FULL SAFE position when it has been moved fully rearward, covering the red "dot" (See Figure 1).

2. The safety should be moved into the FULL SAFE position prior to closing the bolt when the firearm is loaded.

3. In the FULL SAFE position, the trigger is blocked from moving and the bolt can still be opened.

**WHEN CARRYING A LOADED FIREARM, THE SAFETY MUST ALWAYS BE IN THE FULL SAFE POSITION.**

**THE ONLY TIME YOU CAN BE ABSOLUTELY CERTAIN THAT A GUN CANNOT FIRE IS WHEN THE ACTION IS OPEN AND IT IS COMPLETELY EMPTY OF AMMUNITION.**

**SAFETY OFF – READY TO FIRE**

1. The safety is in the OFF position when it has been moved fully forward, exposing the red "dot" (see FIGURE 2).

**\*\*NEVER TRANSPORT/CARRY A LOADED FIREARM WTH THE SAFETY OFF. REMEMBER-AS ON SOME OTHER SAVAGE MODELS, THERE IS NO MID-SAFE POSITION ON THE SAVAGE AXIS\*\***

97.     These material statements and/or representations made regarding the safety were made intentionally, wantonly, recklessly, deliberately, negligently, and/or mistakenly.

98.     These false statements were a material fact of such importance that Plaintiff McAllister would not have purchased or used the subject rifle, but for these false statements.

99.     Plaintiff McAllister reasonably relied on these false statements to her detriment.

100.    These false statements were the proximate cause and/or a contributing cause of Plaintiff McAllister's injuries which include permanent physical and economic injuries and damage, which include past and future pain and suffering, disfigurement, disability, loss of capacity of the enjoyment of life, past and future medical, hospital, surgical, and rehabilitative expenses.

101.    Plaintiff McAllister's injuries are permanent and continuing in nature.

Wherefore, Plaintiff Kelli McAllister demands judgment against Savage Arms, Inc. for all damages, including punitive damages, plus costs, such interest and attorney fees as may be allowed by law, and demands trial by jury of all issues so triable.

Done this 30th day of March, 2023.

/s/ Luke M. Trammell
Matthew G. Garmon (Fla. Bar No. 121519)
Luke M. Trammell (Admitted PHV)
M. Todd Wheeles (Admitted PHV)
**MORRIS HAYNES**
3500 Blue Lake Drive, Suite 200
Birmingham, Alabama 35243
T:     205-324-4008
F:     205-324-0803
E:     mgarmon@mhhlaw.net
        ltrammell@mhhlaw.net
        twheeles@mhhlaw.net

Clay Hornsby (Admitted Pro Hac Vice)
**MORRIS HAYNES**
131 Main Street
PO Box 1660
Alexander City, Alabama 35011
T:     (256) 329-2000
F:     (256) 329-2015
E:     chornsby@mhhlaw.net

*Attorneys for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this the 30th day of March 2023, a true and correct copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system, which will send electronic notification to all counsel of record as follows:

Anthony M. Pisciotti
Danny C. Lallis
Pisciotti Lallis Erdreich
30 Columbia Turnpike, Suite 205
Florham Park, NJ  07932
apisciotti@pisciotti.com
dlallis@pisciotti.com

Steve Cozart, Esq.
Kubicki Draper, PA
125 West Romana St, Suite 550
Pensacola, FL  32502
kwl@kubickidraper.com

/s/ Luke M. Trammell
Of Counsel